United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH LOKI,<br>Petitioner,<br>v.<br>WARDEN OF THE CALIFORNIA CITY DETENTION CENTER,<br>Respondent. | Case No. 1:26-cv-03685 (AMO)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Petitioner Noah Loki is an immigration detainee who was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") on March 12, 2026 following an arrest in Salt Lake City, Utah. Dkt. No. 10-1 at 6. Respondents maintain that he is subject to mandatory detention under 8 U.S.C. § 1226(c)(1) for a 2019 conviction of Utah Code § 58-37-8(2)(a)(i). Dkt. No. 10 at 3. For the reasons stated below, the Court finds that Petitioner is properly detained under 8 U.S.C. § 1226(c)(1), but that due process requires he be provided with a prompt custody redetermination hearing.

## I. BACKGROUND

Petitioner lawfully entered the United States with his family when he was eleven years old and became a lawful permanent resident in 2008. Dkt. No. 17-2 ¶ 5; Dkt. No. 10-1 at 6. Most of his immediate family lives in the United States, including his mother, sister, and brothers. Dkt. No. 17-2 ¶¶10–11. His children—one who is thirteen and another who is three—are both United States citizens, as is his mother and two of his siblings. *Id.* ¶ 12.

Petitioner contends that he has struggled with substance abuse in the past, which has led to a series of criminal convictions, including his 2019 conviction for possession of methamphetamine under Utah Code § 58-37-8(2)(a)(i). *See id.* ¶¶ 14–15; Dkt. No. 10-1 at 7–8. Though the Government was made aware of this criminal conviction in October 2019, Petitioner was not arrested by immigration authorities and placed in removal proceedings at that time. *See* Dkt. No.

United States District Court
Eastern District of California

17-8.

Since the birth of his son in 2023, Petitioner has been working to rehabilitate himself through substance abuse counseling and attending church. Dkt. No. 17-1 ¶¶ 16–17. However, Petitioner has struggled to obey a protective order against him involving his former partner, and has been arrested for violations of the protective order on multiple occasions. *See* Dkt. No. 10-1 at 7. The most recent violation resulted in an arrest in Salt Lake City, Utah. *Id.* Petitioner was transferred to ICE custody from Salt Lake City County Metro Jail on March 12, 2026 and has remained detained since. *Id.*

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner contends that his detention under 8 U.S.C. § 1226(c)(1) is unlawful because Utah Code § 58-37-8(2)(a)(i) is not a qualifying crime under Section 1226(c)(1). *See* Dkt. No. 17 at 5–6. In the alternative, he argues that, even if he is properly detained under Section 1226(c)(1), the statute is unconstitutional as-applied to him. *See* Dkt. No. 17 at 5, 9–12. The Court finds that Petitioner's detention is properly controlled by Section 1226(c)(1), but that due process requires provision of a bond hearing.

**A. Petitioner's Detention Under 8 U.S.C. § 1226(c)**

Section 1226(c)(1)(B) requires detention for noncitizens who are deportable for having been convicted of "any law or regulation … relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). In the immigration context, "an alien is generally removable if he or she has been convicted of a violation of a federal, state, or foreign law 'relating to a controlled substance,' as that term is defined in § [8]02 of the Controlled Substances Act ("CSA"), 21 U.S.C. § 802." *Lazo v. Wilkinson*, 989 F.3d 705, 709 (9th Cir. 2021) (citing 8 U.S.C. § 1227(a)(2)(B)(i)). "Under that cross-referenced definition, the term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter, 21 U.S.C. § 802(6)[.]" *Id*. (citations omitted); *see also* 21 U.S.C. § 812(b)(1)–(5), (c). "In assessing whether a conviction for a particular state offense counts as one 'relating to a controlled substance' under § 237(a)(2)(B)(i), ... [courts first] apply[ ] the so-called 'categorical approach,' under which a 'state conviction triggers removal only if, *by definition*, the underlying crime falls within a category of removable offenses defined by federal law.'" *Lazo*, 989 F.3d at 710 (citing *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015)).

If a state statute applies to substances that are not illegal under the CSA, it is not a categorical match. *Mellouli*, 575 U.S. at 805; *see also Lazo*, 989 F.3d at 710 (explaining section 11350(a) of the California code was not a categorical match because it relied on an overbroad list of controlled substances not similarly regulated by the CSA); *Coronado v. Holder*, 759 F.3d 977, 982–83 (9th Cir. 2014) (explaining that because section 11377(a) includes the khat (Catha Edulis), a substance which does not violate the CSA, petitioner's conviction under 11377(a) was not a categorically removable offense). The same is true for Section 58-37-8(2)(a)(i) as an individual may be convicted of violating this section for possessing a number of substances which are not included in the CSA, such as 7-Hydroxymitragynine. *See* Utah Code § 58-37-4(2)(a)(viii)(A)–(B).

Where a statute is not a categorical match, the Ninth Circuit has applied the "modified categorical approach," to determine whether the precise offense at issue relates to a controlled

substance under the CSA. *See Lazo*, 989 F.3d at 710. Under this approach, a court "must first consider whether [the statute] is 'divisible,' meaning that it 'list[s] *elements* in the alternative, and thereby define[s] multiple crimes.'" *Id*. (quoting *Mathis*, 579 U.S. at 505) (emphasis in original). "By contrast, if a statute 'lists alternative *means* of fulfilling one (or more)' of the 'crime's elements,' that is not enough to establish that the statute is divisible." *Id*. (quoting *Mathis*, 579 U.S. at 512) (emphasis in original).

Petitioner argues that Section 58-37-8(2)(a)(i) is not divisible because the type of controlled substances which may support a conviction under Section 58-37-8(2)(a)(i) are not individual elements, but simply means of committing a single element. Dkt. No. 17 at 5–6. The Ninth Circuit addressed a similar question with respect to the divisibility of Cal. Penal Code § 11350, finding that the list of qualifying controlled substances under the statute could be viewed as individual elements, rather than a means of committing an element. *Lazo*, 989 F.3d at 711–712. In reaching this conclusion, the Court relied (1) on prior Ninth Circuit authority finding a similar controlled substance statute divisible, (2) California case law which had historically allowed separate convictions and sentences for simultaneous possession of different drugs under Section 11350, and (3) California pattern jury instructions for Section 11350 which required that the specific controlled substance be identified in the instruction. *Id*. at 712–713.

Though the Court has not identified any federal cases addressing the divisibility of Section 58-37-8(2)(a)(i), the Board of Immigration Appeals ("BIA") has addressed this question, and, applying reasoning similar to the *Lazo* court, found that Section 58-37-8(2)(a)(i) was divisible. *See Matter of Dikhtyar,* 28 I. & N. Dec. 214 (BIA 2021). In reaching this holding, the BIA first observed that "[t]he plain language of section 58-37-8(2)(a)(i) of the Utah Code metes out different punishments depending on the circumstances underlying a violation, including the identity of the controlled substance possessed." *Id.* at 218. Second, the BIA observed that the Utah jury instructions, like the California pattern instructions, require that the name of the controlled substance be listed. *Id*. at 219–20. Finally, the BIA noted that Utah state courts, like California state courts, also have allowed separate convictions and sentences for simultaneous possession of different drugs. *Id*. at 220–21.

United States District Court
Eastern District of California

Though not binding, the Court finds the BIA's analysis persuasive. Under Section 58-37-8(2)(a)(i), an individual may be penalized differently depending on which specific controlled substance they possessed. *See* Utah Code § 58-37-8(2)(b)(i)–(ii) (noting that a conviction for 100 pounds or more of marijuana results in a second degree felony). As such, which particular controlled substance one possesses is significant and must be proven to justify the severity of the punishment. *Id* (dictating that a third conviction for possession of Schedule I or II controlled substance results in third degree felony). Also, here as in *Lazo*, 989 F.3d at 713, the type of substance must be listed in the jury instructions for a possession of a controlled substance offense, *see* Model Utah Jury Instructions, Second Edition, CR1203. Accordingly, in line with *Matter of Dikhtyar*, 28 I. & N. Dec. 214, 218 (BIA 2021), the Court finds that Utah Code § 58-37-8(2)(a)(i) is divisible, and that application of the modified categorical approach is appropriate here.

Where a statute is divisible, a court "may consult a limited set of documents to determine which statutory phrase was the basis for the conviction[,]" *Lazo*, 989 F.3d at 714 (internal quotations omitted), including "the charging document, the terms of a plea agreement, the transcript of colloquy between the judge and the defendant in which the factual basis for the plea was confirmed by the defendant, and comparable judicial records." *Coronado*, 759 F.3d at 985. Here, review of the records submitted by the parties confirms that Petitioner was convicted of possession of methamphetamine. *See* Dkt. 10-1 at 7. As methamphetamine is a federally controlled substance under the CSA, *see* 21 U.S.C. § 812(c), Petitioner's conviction is a violation of law "relating to a controlled substance" as defined in the CSA, rendering § 1226(c) applicable.

**B. Due Process**

As Petitioner may be detained under § 1226(c), the Court next turns to whether application of the statute to Petitioner has become unconstitutional. In *Demore v. Kim*, the Supreme Court upheld the § 1226(c) mandatory detention scheme as constitutional on its face. *Demore v. Kim*, 538 U.S. 510, 531 (2003). And, more recently in *Nielsen v. Preap*, the Supreme Court affirmed that § 1226(c)'s mandatory detention requirements apply even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (reversing Ninth Circuit's holding that

criminal aliens not arrested immediately upon release from criminal custody are exempt from Section 1226(c)'s mandatory detention scheme and thus entitled to a bond hearing). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Id.* at 420. Accordingly, "[c]ourts routinely review as-applied constitutional challenges to § 1226(c) detention." *Kakkar v. Chestnut*, No. 1:25-CV-1627-JLT-SAB, 2025 WL 3638298, at *5 (E.D. Cal. Dec. 15, 2025) (collecting cases).

Judges have reached different conclusions about what standards ought to govern as-applied challenges to detention under Section 1226(c), with factors such as the length of detention, whether the detention is likely to continue, and the reasons for the delay among items considered amongst the plethora of different balancing tests. *See generally Keo v. Warden of the Mesa Verde Ice Processing Ctr.*, Case No. 1:24-cv-00919, 2025 WL 1029392, at *5 (E.D. Cal. Apr. 7, 2025) (summarizing precedents), *appeal dismissed sub nom. Keo v. Warden*, No. 25-3546, 2025 WL 2528945 (9th Cir. June 27, 2025). Many courts have applied the balancing test articulated in *Mathews v. Eldridge*, which Petitioner proposes as the applicable test here. *See, e.g.*, *Kakkar*, 2025 WL 3638298, at *5–7 (applying *Mathews* factors); *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (applying *Mathews* factors to determine if due process required provision of a third bond hearing). As Respondents have provided no alternative framework for analyzing Petitioner's due process claim, the Court applies *Mathews* here.

Petitioner's as-applied challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). The Court finds that due process requires Petitioner be afforded a bond hearing, but not immediate release.

**1. Liberty Interest**

Petitioner has a protected liberty interest under the Due Process clause. *Perera v.*

*Jennings* and *Pham v. Becerra* are instructive here. Both cases involved petitioners who were detained under Section 1226(c) years after serving their criminal sentences, despite the government's awareness of their conviction, and having successfully reintegrated into their communities. In *Perera*, Petitioner had been at liberty for three years, completed probation, avoided further criminal charges, got engaged, and committed himself to his education, career, church, and growing family. *Perera v. Jennings,* No. 21-CV-04136-BLF, 2021 WL 2400981, at *1, 4 (N.D. Cal. June 11, 2021). In *Pham*, Petitioner had been at liberty for seven years, completed three years of probation, registered as a sex offender, got married, had his first child, and applied for U.S. citizenship. *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *1 (N.D. Cal. Mar. 31, 2023).

Similarly, the conviction which Respondents claim is the basis for Petitioner's detention was adjudicated in 2019, but Petitioner was not detained by ICE until 2026, despite DHS being on notice of the conviction during this entire period. *See* Dkt. No. 17-8. Since his release in 2019, Petitioner has completed two sobriety programs, began attending Salt Lake City Capitol Church, and has been searching for new employment. Dkt. No. 17-1 ¶¶ 16–18. Accordingly, the Court finds that Petitioner has developed a liberty interest during his seven years of post-conviction freedom during which he has developed attachments of normal life.

**2. *Mathews* Factors**

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. *Garcia*, 2025 WL 1927596, at *3. There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As regards the first factor, Petitioner has significant private interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody,

detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner has been a legal permanent resident for twenty-eight years. Dkt. No. 17-1 ¶ 5. During that time, he has raised two children, and over the last few years has been working to overcome his prior substance abuse issues. *Id.* ¶¶ 12, 13, 16–19. Thus, Petitioner has an "overwhelming interest" in his continued freedom and Respondents offer no argument to the contrary. *Perera*, 2021 WL 2400981, at *4.

Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, "[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is supposed to be "nonpunitive in purpose and effect[,]" is justified when a non-citizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. Though it is not for this Court to determine if Petitioner would be a flight risk or danger to the community, the record shows that Petitioner has been working on rehabilitative efforts over the last few years. To date, no neutral decisionmaker has considered and weighed this evidence. *Perera*, 2021 WL 2400981, at *4 (citing *Nielsen*, 586 U.S. at 438 (Breyer, J., dissenting) (emphasizing the constitutional concern implicated by denying a non-citizen a bond hearing "who committed a crime many years before and has since reformed, living productively in a community"). Accordingly, the need for a bond hearing is high.

Turning to the last factor, the government's interest in keeping Petitioner detained without bond is low. In immigration court, custody hearings are routine and impose a "minimal" cost. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (citations omitted). Though the government has a significant interest in protecting the public from dangerous criminal individuals subject to removal, such argument is undermined somewhat by the fact that Respondents waited seven years to arrest the Petitioner. *Perera*, 2021 WL 2400981, at *5 ("The government's interest … is further diluted by the fact that it waited six years to detain him. ICE was aware of Perera's potential removability as early as 2010 … This time lapse significantly undermines the government's interest in mandatorily detaining him."). Accordingly, this factor also weighs in favor of a bond hearing.

United States District Court
Eastern District of California

Under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him with a bond hearing. The Court further finds that provision of a constitutionally adequate bond hearing is appropriate to remedy this violation. Though Petitioner was not afforded a bond hearing at the outset of his detention, immediate release is not warranted because immigration authorities never previously detained and released Petitioner on a finding that he was neither a flight risk nor danger to the community. *See Prior v. Andrews,* No. 1:25-CV-01131-JLT-EPG (HC), 2026 WL 698801, at *2 (E.D. Cal. Mar. 12, 2026) (adopting in part findings and recommendations to grant petition for writ of habeas corpus but declining to order the petitioner's immediate release) (citing *Kakkar*, 2025 WL 3638298, at *6–7, *Perera*, 2021 WL 2400981, at *4, and *Pham*, 2023 WL 2744397, at *1–2).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED in PART. Petitioner SHALL be provided a *substantive* bond hearing within fourteen days at which the Immigration Judge shall determine whether Petitioner poses a risk of flight or a danger to the community if he is released. Petitioner shall be allowed to have counsel present. The bond hearing may be rescheduled to a later date upon request by Petitioner or his counsel. At any such hearing, the Government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. Respondents shall file a status report attaching the immigration judge's order and findings within five days of the hearing being held. The Clerk of the Court is directed to close this case and enter judgement in favor of Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: August 6, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge